IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| TRUST ONE PAYMENT ) <br> SERVICES, INC., ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> GLOBAL SALES SOLUTIONS, LLC ) <br> d/b/a Host Vacations, et al., ) <br> ) <br> Defendants. ) | CIVIL ACTION FILE <br><br> NUMBER 1:11-cv-1186-TCB |

**O R D E R**

This case comes before the Court on Defendants' motion to dismiss the original complaint [6] and Defendants' motion to dismiss the amended complaint [11]. As an initial matter, an amended complaint "supersedes the initial complaint and becomes the operative pleading in the case." *Lowery v. Ala. Power Co.*, 483 F.3d 1184, 1219–20 (11th Cir. 2007). Therefore, Defendants' first motion to dismiss [6] will be denied as moot. The Court will consider Defendants' second motion to dismiss [11] below.

I.  Background

Plaintiff Trust One Payment Services, Inc. provides credit and debit card processing services to merchants.  These services enable merchants to accept credit and debit card payments from their customers.  Trust One's typical business arrangement involves both a merchant and a "sponsor bank."  To demonstrate the roles of these entities, it is helpful to consider a typical transaction of a merchant using Trust One's services.

When a customer seeks to pay with a credit or debit card, the merchant first submits the transaction to Trust One for approval.  Trust One then obtains approval from the card issuer, and the customer is able to complete his or her transaction with the merchant.  Then, on a daily basis, the merchant submits all of its authorized charges to Trust One for payment.  Trust One then facilitates the transfer of funds from the card issuer to the sponsor bank.  Finally, the sponsor bank deposits the payment into a bank account designated by the merchant.

When a cardholder disputes a transaction, the card issuer has a right to recover the relevant payment from the sponsor bank.  This is referred to as a "chargeback."  In the event of a chargeback, the sponsor bank will first attempt to debit the payment from the merchant's bank account.  The

sponsor bank may also maintain a reserve account for the merchant from which it can withdraw funds in the event the merchant's bank account is exhausted.  However, if the merchant's bank account and any reserve account held for the merchant do not have sufficient funds to cover the chargeback, Trust One is obligated to pay the sponsor bank for the chargeback and obtain reimbursement from the merchant.

In June 2010, Defendant Global Sales Solutions, LLC ("GSS"), a merchant purportedly in the business of selling travel packages, applied for a merchant account with Trust One.  The merchant application, along with the terms and conditions attached thereto, became the merchant agreement that is the subject of this action.  But while the application was submitted to Trust One, and Trust One's contact information appears in the header on the first page, it was not a contract between GSS and Trust One.  Instead, it states that it is an agreement among GSS; Global Payments Direct, Inc. ("GPDI") (the sponsor bank); and HSBC Bank USA, N.A. (GPDI's "member bank").  Under the merchant agreement, GPDI was to provide credit card processing services to GSS, and GSS was obligated to pay GPDI for any chargebacks against GSS's transactions.

At all times relevant to this action, Defendant Robert Sacco was GSS's CEO, and Defendant Mark McCloskey was GSS's vice president. As CEO, Sacco executed the merchant agreement on behalf of GSS. In addition, both Sacco and McCloskey executed the agreement as personal guarantors of GSS's obligations to GPDI.

Although Trust One was to work with GPDI to provide credit card processing services to GSS, Trust One did not have a written agreement with GSS. However, Trust One did have a written agreement with GPDI. That agreement provided that (1) Trust One would be obligated to reimburse GPDI for any chargebacks against the GSS account, and (2) upon GPDI's receipt of reimbursement from Trust One, GPDI would be deemed to have assigned to Trust One all of its rights to recover from GSS under the merchant agreement.

During the first few months after GSS's merchant account was opened, few transactions were submitted to Trust One for processing. Thereafter, the volume of GSS's transactions increased drastically, along with the number of chargebacks against the GSS account. Chargebacks equal to 0.5 percent of gross receipts are generally considered high, and chargebacks equal to 2 percent of gross receipts violate both Visa and

MasterCard regulations.  The chargebacks against the GSS account quickly exceeded 60 percent of gross receipts.  In November 2010, GSS submitted $363,759.56 in transactions to Trust One for processing, and there were $313,470.00 in chargebacks against the GSS account.

In response to the high level of chargebacks against the GSS account, Trust One contacted Sacco and other agents of GSS and demanded that GSS pay its chargeback liability and rectify the causes of the chargebacks.  In December 2010, Sacco promised Trust One that GSS would pay its chargeback liability and make refunds to unsatisfied customers to avoid additional chargebacks.  As a result, Trust One agreed to leave the GSS account open.  When Sacco's promises went unfulfilled, however, GPDI demanded that Trust One close the GSS account.  The account was finally closed on January 25, 2011, but chargebacks continued to accumulate for transactions that occurred prior to that date.

The chargebacks that accumulated against the GSS account totaled $1,221,899.  Of that amount, Trust One paid GPDI $733,336 out of its own funds.  In addition, because of the high level of chargebacks and because Trust One allowed the GSS account to remain open until January 2011, Trust One incurred a contractual penalty from MasterCard in the amount of

$143,389.85. Thus, the total losses suffered by Trust One as a result of the GSS chargebacks exceed $876,000.

In an effort to mitigate its damages, Trust One hired an independent agency to investigate the GSS chargebacks. The agency determined that the chargebacks resulted from either (1) the complete failure of GSS to provide any product or service, or (2) a scheme by which GSS offered to reduce the prices of its travel packages if its customers would charge back their purchases and send a check to a new company. The agency did not find any customers who received a service from GSS.

On April 12, 2011, Trust One filed its original complaint in this action, bringing a claim against GSS for breach of the merchant agreement, a claim against Sacco and McCloskey for breach of their guaranties, and a claim against all Defendants for fraud. Trust One also sought to recover its attorney's fees and costs. On July 10, Defendants filed their first motion to dismiss, arguing that the Court lacked personal jurisdiction over them and that Trust One's initial complaint failed to state a claim upon which relief could be granted.

On July 26, GPDI sent a letter to Trust One memorializing an assignment of GPDI's rights under the merchant agreement to Trust One.

The letter represents that pursuant to the contract between GPDI and Trust One, the assignment became effective on March 31, 2011 as a result of Trust One's payment to GPDI of the amounts GSS owed for chargebacks under the merchant agreement.

On July 27, Trust One filed its amended complaint, bringing the same claims as before but supplementing the allegations supporting those claims. In addition, Trust One attached to the amended complaint a copy of the letter from GPDI regarding the assignment of GPDI's rights under the merchant agreement to Trust One.  On August 9, Defendants filed their second motion to dismiss, this time for lack of subject-matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1).  They argue that GPDI, not Trust One, is the real party in interest under the merchant agreement and that Trust One therefore lacks standing to bring its claims.

II.   Discussion

    A.   Legal Standard

Federal Rule of Civil Procedure 17(a) provides that "[a]n action must be prosecuted in the name of the real party in interest."  This is essentially a

codification of the prudential limitation on third-party standing.[1]  *RK Co. v. See*, 622 F.3d 846, 851 (7th Cir. 2010).  The Federal Rules of Civil Procedure do not specify the proper procedural mechanism for a challenge to the plaintiff's status as the real party in interest.  6A CHARLES ALAN WRIGHT, ARTHUR R. MILLER & MARY KAY KANE, FEDERAL PRACTICE AND PROCEDURE § 1554 (3d ed. 2010).  But standing is a jurisdictional issue, and a challenge to standing may be brought in a motion to dismiss for lack of subject-matter jurisdiction under Rule 12(b)(1).  *Stalley ex rel. U.S. v. Orlando Reg'l Healthcare Sys., Inc.*, 524 F.3d 1229, 1232 (11th Cir. 2008).  Thus, the Court finds it appropriate to consider a real-party-in-interest challenge under Rule 12(b)(1).

The Eleventh Circuit has established the following guidelines for considering a motion to dismiss under Rule 12(b)(1):

> A defendant can move to dismiss a complaint under Rule 12(b)(1) for lack of subject matter jurisdiction by either facial or factual attack.  A facial attack on the complaint requires the

---

[1] Defendants seem to conflate the real-party-in-interest requirement with Article III standing.  To the extent they would separately argue that Trust One lacks Article III standing, their argument would be meritless.  In order to establish Article III standing, Trust One must show that (1) it suffered an injury in fact, (2) that was caused by the conduct complained of, and (3) is likely to be redressed by a favorable decision.  *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992).  Trust One has satisfied these requirements by alleging that (1) it was forced to pay over $876,000, (2) as a result of GSS's fraud and breach of the merchant agreement, and (3) that injury will be redressed by an award of money damages.

> court merely to look and see if the plaintiff has sufficiently alleged a basis of subject matter jurisdiction, and the allegations in his complaint are taken as true for the purposes of the motion.  By contrast, a factual attack on a complaint challenges the existence of subject matter jurisdiction using material extrinsic from the pleadings, such as affidavits or testimony.

*Id.* at 1232–33 (internal citations and quotation marks omitted).  In this case, Defendants have not submitted material extrinsic to the pleadings in support of their motion.[2]  Thus, the Court construes the motion as a facial attack on subject-matter jurisdiction and will accept the allegations in the complaint as true and determine whether they sufficiently allege that Trust One is the real party in interest.[3]

Finally, although the Court has determined that a Rule 17 challenge may be brought via Rule 12(b)(1), the Court must bear in mind that Rule 17 places a special limitation on the Court's power of dismissal.  Specifically, the Court "may not dismiss an action for failure to prosecute in the name of the real party in interest until, after an objection, a reasonable time has

---

[2] In their reply brief, Defendants do request that the Court order Trust One to produce additional evidence of the assignment, including Trust One's contract with GPDI and proof that it reimbursed GPDI for the GSS chargebacks.  The Court declines to do so at this time.  If such evidence is produced in discovery and provides a basis for a factual attack on subject-matter jurisdiction, Defendants may reassert their Rule 17 defense in a later motion.

[3] Consequently, the Court will not consider the affidavit attached to Trust One's response brief.

been allowed for the real party in interest to ratify, join, or be substituted into the action." FED. R. CIV. P. 17(a)(3).

### B. Analysis

Defendants contend that Trust One is not the real party in interest with respect to any of the claims in the amended complaint. The Court will first address Trust One's claims based on the merchant agreement, i.e., its claims for breach of contract and breach of guaranty. The Court will then consider Trust One's fraud claim.

#### 1. Claims Based on the Merchant Agreement

First, Defendants argue that Trust One cannot assert GPDI's rights under the merchant agreement because GPDI did not assign those rights to Trust One until after the original complaint was filed. But even assuming the assignment was not effective until it was memorialized in GPDI's July 26, 2011 letter to Trust One, this argument is without merit. "There is no general requirement as to when an assignment must be made and it has been held that even when the claim is not assigned until after the action has been instituted, the assignee is the real party in interest and can maintain the action." 6A CHARLES ALAN WRIGHT, ARTHUR R. MILLER & MARY KAY

KANE, FEDERAL PRACTICE AND PROCEDURE § 1545 (3d ed. 2010).  The timing of the assignment does not provide a basis for dismissing Trust One's claims or substituting GPDI for Trust One.

The cases on which Defendants rely do not require a different result because they address Article III rather than prudential standing.  Article III standing is determined as of the commencement of the lawsuit and is not affected by subsequent events.  *Charles H. Wesley Educ. Found., Inc. v. Cox*, 408 F.3d 1349, 1352 n.3 (11th Cir. 2005).  Prudential standing, on the other hand, may be affected by events that occur after the commencement of the lawsuit.  *Dunmore v. United States*, 358 F.3d 1107, 1112 (9th Cir. 2004).  In this case, Trust One had Article III standing when the original complaint was filed.  Therefore, it was permissible for Trust One to cure any prudential standing defects after the suit was filed.

Defendants also contend that Trust One is not the real party in interest because the assignment is qualified and/or revocable.  However, GPDI's letter states that the assignment was made in exchange for Trust One's payment to GPDI of the amounts due by GSS under the merchant agreement.  Thus, the assignment was supported by consideration and is not revocable.  *See* 6A C.J.S. Assignments § 70 (2012) (an assignment for

valuable consideration is irrevocable).  Moreover, GPDI's letter explicitly states that GPDI "does hereby give, grant, assign and convey to Trust One all of its right, title and interest in and to [GPDI's] claims that arise under the merchant agreement."  Therefore, there is no basis for concluding that the assignment was qualified in any way.

For these reasons, Defendants' concern that they may be subjected to duplicative litigation is unfounded.  GPDI has assigned its rights under the merchant agreement to Trust One.  Thus, GPDI is no longer the real party in interest under the agreement, and Defendants are not at risk of having to defend against the same claims twice.

In sum, based on the amended complaint and the exhibits attached thereto, Trust One has sufficiently alleged that it is the real party in interest under the merchant agreement, and Trust One will be permitted to proceed with its claim against GSS for breach of contract and its claim against Sacco and McCloskey for breach of their guarantees.

### 2. Fraud Claim

Finally, Defendants argue that Trust One's fraud claim is outside the scope of the assignment and thus Trust One is not the real party in interest with respect to that claim.  The Court agrees that GPDI did not assign any

fraud claim to Trust One.  Indeed, fraud claims are not assignable under Georgia law.  O.C.G.A. § 44-12-24.  But the alleged fraud was committed directly upon Trust One, independent of GPDI.  Therefore, no assignment of the claim was necessary, and Trust One is the real party in interest with respect to that claim.

III.  Conclusion

Defendants' motion to dismiss the original complaint [6] is DENIED AS MOOT, and Defendants' motion to dismiss the amended complaint [11] is DENIED.

IT IS SO ORDERED this 14th day of March, 2012.

Timothy C. Batten, Sr.
United States District Judge