IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

TRUST ONE PAYMENT          )
SERVICES, INC.,            )
                           )
          Plaintiff,       )
                           )        CIVIL ACTION FILE
v.                         )
                           )        NUMBER 1:11-cv-1186-TCB
GLOBAL SALES SOLUTIONS, LLC )
d/b/a Host Vacations, et al., )
                           )
          Defendants.      )

## O R D E R

This case involves a complicated dispute concerning the credit card

processing industry.  Now before the Court is Third-Party Defendant Global

Payments Direct, Inc.'s motion to dismiss [26] Defendants Global Sales

Solutions, LLC and Robert Sacco's third-party complaint [20].

## I.    Background

### A.    Procedural Background

On April 12, 2011, Plaintiff Trust One Payment Services, Inc. filed this

action against Defendants Global Sales Solutions, LLC ("GSS"), Robert

Sacco and Mark McCloskey.  Trust One brought a claim against GSS for breach of a merchant agreement, a claim against Sacco and McCloskey for breach of guarantees, and a claim against all Defendants for fraud.

On March 27, GSS and Sacco jointly filed a responsive pleading that included a counterclaim against Trust One and a third-party complaint against Raul Ore and Global Payments Direct, Inc. ("GPDI").  Specifically, they bring claims against (1) GPDI and Trust One for breach of contract and tortious interference; (2) Ore and Trust One for fraud and negligent misrepresentation; (3) Ore for defamation; (4) GPDI, Trust One and Ore for indemnification or contribution; and (5) GPDI for conversion.  GSS and Sacco also seek a declaratory judgment to establish their rights and obligations in relation to Trust One, GPDI and three nonparties.

GPDI now moves to dismiss all of GSS and Sacco's third-party claims against it.

### B.    Facts Alleged by Trust One

Trust One provides credit and debit card processing services to merchants.  Trust One's services enable merchants to accept credit and debit card payments from their customers.  Trust One's typical business arrangement involves both a merchant and a "sponsor bank."

2

In a typical transaction where a customer seeks to pay with a credit or debit card, the merchant first submits the transaction to Trust One for approval. Trust One then obtains authorization from the card issuer, and the customer is able to complete his or her transaction with the merchant.

Then, on a daily basis, the merchant submits all of its authorized charges to Trust One for payment. Trust One facilitates the transfer of funds from the card issuer to the sponsor bank. Finally, the sponsor bank deposits the payment into a bank account designated by the merchant.

When a cardholder disputes a transaction, the card issuer has the right to recover the relevant payment from the sponsor bank. This is referred to as a "chargeback." In the event of a chargeback, the sponsor bank will first attempt to debit the payment from the merchant's bank account. The sponsor bank may also maintain a reserve account for the merchant from which it can withdraw funds in the event the merchant's bank account is exhausted. However, if the merchant's bank account and its reserve account do not have sufficient funds to cover the chargeback, Trust One is obligated to pay the sponsor bank for the chargeback and obtain reimbursement from the merchant.

In June 2010, GSS applied for a merchant account with Trust One. Trust One contends that the merchant application, along with the terms and conditions attached thereto, became the merchant agreement that is the subject of this action.  Though the application was submitted to Trust One and Trust One's contact information appears in the header on the first page, Trust One maintains that the executed agreement was actually a contract between GSS, GPDI (acting as the sponsor bank), and HSBC Bank USA, N.A. (GPDI's "member bank").  Under this merchant agreement, GPDI was to provide credit card processing services to GSS, and GSS was obligated to pay GPDI for any chargebacks against GSS's transactions.

As CEO of GSS, Sacco executed the merchant agreement on behalf of GSS.  Due in part to Sacco's poor credit history, both Sacco and McCloskey, GSS's vice president, executed the agreement as personal guarantors of GSS's obligations to GPDI.

Trust One worked with GPDI to provide credit card processing services to GSS, but Trust One did not have a written agreement with GSS. However, Trust One did have a written agreement with GPDI.  That agreement provided that (1) Trust One would be obligated to reimburse GPDI for any chargebacks against the GSS account, and (2) upon GPDI's

4

receipt of reimbursement from Trust One, GPDI would be deemed to have assigned to Trust One all of its rights to recover from GSS under the merchant agreement.

Trust One alleges that between July 2010 and January 2011, the chargebacks against the GSS account exceeded sixty percent of gross receipts and totaled $1,221,899.  Trust One paid GPDI $733,336 out of its own funds and had to pay a $143,389.85 contractual penalty to MasterCard.  Thus, Trust One contends that its total losses as a result of the GSS chargebacks exceeded $876,000.  After failing to receive reimbursement from GSS for this amount, Trust One filed its claims against GSS, Sacco and McCloskey.

### C.   Facts Alleged by GSS and Sacco in Their Third-Party Complaint

From July 2010 to January 2011, GSS was in the business of purchasing and reselling vacation packages and timeshare rentals.  Sacco organized GSS and served as the company's CEO.

GSS's business was characterized by high levels of chargebacks and customer disputes.  GSS would resell vacation packages based upon the property owners' representations, and customers often found that those

5

representations did not prove to be true.  Customers who purchased the packages could also decide to change their vacation plans or otherwise experience buyers' remorse over the purchases they made.

Sacco, understanding that high levels of chargebacks were characteristic of his business, wanted to find credit card processing companies that would permit a high level of chargebacks without terminating the processing agreement.  To that end, he met with David Guest, an "introducing party" for such arrangements.

Guest was solicited by Third-Party Defendant Raul Ore, an independent sales agent who worked for Trust One, GPDI or both.  GPDI provides payment products that manage, support and allow merchants to accept credit and debit card purchases.  Trust One acted as the guarantor and was responsible for reimbursing GPDI for any unpaid chargebacks.

Ore represented to Guest that Trust One was willing to undertake a high-risk merchant account and permit a higher rate of chargebacks, even though it was GPDI that would have to handle and approve the transaction processing.  Based on Ore's representations, Guest recommended Trust One's and GPDI's services to Sacco, indicating that the companies would be able to structure a processing arrangement to accommodate GSS's high-risk

6

business despite Sacco's poor credit rating.  Ore also forged documents to induce GPDI to begin processing the GSS account.[1]

Based upon discussions among Sacco, Guest and Ore, GSS and GPDI reached a verbal agreement for the processing of credit card transactions. The parties did not reduce this agreement to writing, and they did not discuss any specific contract provisions.

Pursuant to this oral agreement and per the direction of Guest, GSS switched its credit card processing to GPDI and quickly increased its transactions.  GPDI's willingness to undertake the high volume of transactions resulted in GSS's rapid growth.  However, as the number of transactions increased, so did the number of chargebacks.

In order to reduce the number of chargebacks, the custom and practice for credit card processors is to assist merchants in controlling chargebacks and to accommodate and investigate customer disputes.  Such cooperation is particularly important because many disputes do not actually result in the customer being entitled to a refund.  Moreover, communicating with credit card customers at early stages of a dispute often results in resolution of the dispute without a chargeback.

---

[1] Sacco and GSS aver that the document attached as Exhibit A to Plaintiff's amended complaint is forged and is not a true copy of parties' agreement.

In December 2010, GSS experienced a higher rate of chargebacks that corresponded not only with the higher number of transactions, but also GDPI's alleged inability to coordinate reasonable procedures for reducing chargebacks.[2] Sacco discussed the issue with Mr. Cason of Trust One and indicated his willingness to assist in the reduction of chargebacks. However, Sacco received little cooperation or guidance on how to do so.

In January 2011, Trust One instructed GDPI to terminate its credit card processing arrangement with GSS because of the company's increasing risk and volume of chargebacks. Trust One gave GSS only one day's notice before it terminated the merchant agreement and ceased doing business on the GSS account. This termination led to the immediate collapse of GSS, which relied on credit card commissions as its primary source of revenue. GSS also alleges that this termination led to a steep rise in the number of chargebacks, though GSS fails to explain how or why the number of chargebacks increased.

---

[2] GSS contends that either GDPI, Trust One, or both were at fault for not coordinating such procedures. However, because this motion concerns GPDI, the Court will focus on GSS's allegations against GPDI.

## II.   Discussion

### A.   Legal Standard

Under Federal Rule of Civil Procedure 12(b)(6), a claim will be
dismissed for failure to state a claim upon which relief can be granted if it
does not plead "enough facts to state a claim to relief that is plausible on its
face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 547 (2007).  The Supreme
Court has explained this standard as follows:

> A claim has facial plausibility when the plaintiff pleads factual
> content that allows the court to draw the reasonable inference
> that the defendant is liable for the misconduct alleged.  The
> plausibility standard is not akin to a "probability requirement,"
> but it asks for more than a sheer possibility that a defendant has
> acted unlawfully.

*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal citation omitted).

Thus, a claim will survive a motion to dismiss only if the factual allegations
in the complaint are "enough to raise a right to relief above the speculative
level." *Twombly*, 550 U.S. at 555.

In considering a defendant's motion to dismiss under Rule 12(b)(6),
the allegations in the pleading must be accepted as true and construed in
the light most favorable to the pleader.  *Powell v. Thomas*, 643 F.3d 1300,
1302 (11th Cir. 2011).  But the court need not accept legal conclusions, nor
must it accept as true legal conclusions couched as factual allegations.

9

*Iqbal*, 556 U.S. at 678.  Thus, evaluation of a motion to dismiss requires two steps: (1) eliminate any allegations in the complaint that are merely legal conclusions, and (2) where there are well-pleaded factual allegations, "assume their veracity and . . . determine whether they plausibly give rise to an entitlement to relief."  *Id.* at 664.

### B.   Analysis

GPDI contends that GSS and Sacco's third-party complaint fails to state a claim upon which relief can be granted.

### 1.   Breach of Contract

GPDI first contends that the breach-of-contract claim should be dismissed because GSS and Sacco fail to enumerate any specific terms of the verbal agreement that were allegedly breached.  Specifically, GPDI contends that while GSS and Sacco claim that GPDI breached their agreement by terminating GSS's credit card processing with only one day's notice, GSS has not identified any contractual provisions relating to the terms of the agreement or GPDI's right to terminate the agreement.  Similarly, while GSS and Sacco allege that GPDI breached the agreement by failing to (1) provide assistance with the management of chargebacks, (2)

appropriately investigate the validity of chargebacks, and (3) timely

disclose the occurrence of chargebacks, GSS does not identify specific

contractual provisions importing these duties upon GPDI.

"Under OCGA § 13-3-1, the plaintiff in a breach of contract action

has the burden of pleading and proving three elements: subject matter of

the contract, consideration, and mutual assent by all parties to all contract

terms." *Broughton v. Johnson*, 247 Ga. App. 819, 819, 545 S.E.2d 370, 371

(2001) (citing *Lamb v. Decatur Fed. Sav. & Loan Ass'n*, 201 Ga. App 583,

585, 411 S.E.2d 527, 529 (1991)).  In order to recover, the plaintiff must also

prove "the breach and the resultant damages to the party who has the right

to complain about the contract being broken." *Graham Bros. Constr. Co. v.

C.W. Matthews Contracting Co.*, 159 Ga. App. 546, 550, 284 S.E.2d 282,

286 (1981).

Here, GSS and Sacco allege that the parties entered into a verbal

agreement for the processing of credit card transactions.  Although they

maintain that GPDI breached this agreement by not providing proper

assistance in managing chargebacks and by terminating the agreement with

only one's day notice, they fail to allege that GPDI actually agreed to assist

with chargeback management or to give advance notice before terminating

11

its services.  Accordingly, their breach of contract claim fails to the extent it is based upon the theory that GPDI violated an express term of the parties' agreement.

GSS and Sacco also argue that GPDI's termination of the contract with only one day's notice was unreasonable.  However, under Georgia law, "[a] contract of indefinite duration (whether an employment contract or otherwise) is terminable at will by either party."  JOHN K. LARKINS, JR., GEORGIA CONTRACTS: LAW AND LITIGATION § 10:8 (2d ed. 2011); *see also Voyles v. Sasser*, 221 Ga. App. 305, 305, 472 S.E.2d 80, 82 (1996); 17A AM. JUR. 2d *Contracts* § 544 (2012) ("A notice requirement will not be read into a contract providing that it may be terminated by either party at any time but containing no provision as to notice of termination.").  GSS and Sacco fail to aver any facts suggesting that the contract was not an indefinite, at-will agreement.  Accordingly, their breach of contract claim cannot survive on this basis.

Lastly, GSS and Sacco allege that it is customary for credit card processors to assist merchants in managing chargebacks and that GPDI breached the parties' agreement by failing to follow this custom.  Under Georgia law, however, a custom is binding "only when it is of such universal

12

practice as to justify the conclusion that it became, by implication, a part of the contract." O.C.G.A. § 13-2-2; *see also* LARKINS, *supra*, § 9:4 ("In order for a business usage or custom to become part of a contract, it must be shown that it was known to both parties."). GSS and Sacco do not contend that GPDI was aware of the alleged custom on which they rely, nor do they allege that the custom was so prevalent in the financial-processing industry as to be incorporated into the parties' agreement by implication. Accordingly, their breach of contract cannot survive on this basis.

For the foregoing reasons, GSS and Sacco's claim for breach of contract against GPDI will be dismissed.

### 2.   Tortious Interference

In response to GPDI's motion to dismiss, GSS and Sacco have abandoned their claim for tortious interference against GPDI. Accordingly, this claim will be dismissed.

### 3.   Indemnification or Contribution

GPDI argues that GSS and Sacco's claim for indemnification or contribution also fails because GSS and Sacco have not alleged that (1) the parties agreed to indemnification; (2) GSS and Sacco have been held liable

for any tort committed by GPDI; or (3) the parties are joint tortfeasors or joint obligors.

Georgia law defines indemnity as "the obligation or duty resting on one person to make good any loss or damage another has incurred by acting at his request or for his benefit." *Lanier at McEver, L.P. v. Planners & Eng'rs Collaborative, Inc.*, 284 Ga. 204, 206, 663 S.E.2d 240, 242 (2008) (quoting *Holmes v. Clear Channel Outdoor, Inc.*, 284 Ga. App. 474, 477, 644 S.E.2d 311, 314 (2007)). The duty to indemnify may arise either under a contract or if a party "is compelled to pay damages because of negligence imputed to him as the result of a tort committed by another." *U.S. Laws, Inc. v. Cutting Edge Landscaping, LLC*, 311 Ga. App. 674, 675, 716 S.E.2d 779, 783 (2011) (quoting *Nguyen v. Lumbermens Mut. Cas. Co.*, 261 Ga. App. 553, 556, 583 S.E.2d 220, 224 (2003)). However, where there are no allegations of imputed negligence or vicarious liability, common law indemnity does not apply. *City of Atlanta v. Benator*, 310 Ga. App. 597, 609, 714 S.E.2d 109, 118 (2011).

Contribution refers to "apportioning damages between joint tortfeasors by requiring each to pay his proportionate share." *Thyssen Elevator Co. v. Drayton-Bryan Co.*, 106 F. Supp. 2d 1342, 1345 (S.D. Ga.

2000) (quoting *Greyhound Lines, Inc. v. Cobb Cnty.*, 681 F.2d 1327, 1332 n.7 (11th Cir. 1982)); *see also* O.C.G.A. § 23-2-71 ("In cases of joint, joint and several, or several liabilities of two or more persons, where all are equally bound to bear the common burden and one has paid more than his share, he shall be entitled to contribution from the others . . . ."). Contribution "requires a showing of common, 'in pari delicto' (i.e., equally at fault) level liability, while indemnification does not." *Thyssen*, 106 F. Supp. 2d at 1346.  Thus, to sustain a claim for contribution, a plaintiff must allege some basis for common liability with the party from whom he seeks contribution.

Here, GSS and Sacco have not pled any terms of the parties' agreement that would give rise to contractual indemnity.  They instead rely on common-law indemnity principles, which apply only where there is imputed negligence or vicariously liability.  *Benator*, 310 Ga. App. at 609, 714 S.E.2d at 118.  But GSS and Sacco do not allege that a wrong has been imputed to them or that they have been held liable on a theory of vicarious liability.  Rather, they suggest that GPDI may be independently liable for the losses sustained by Trust One based upon its own torts or a contractual

obligation.  Under these circumstances, common law indemnity does not apply.

Furthermore, because GSS and Sacco have not alleged that they and GPDI are jointly obligated or sharing in any liability, they also fail to state a claim for contribution.  For the foregoing reasons, GSS and Sacco's claim against GPDI for indemnification or contribution will be dismissed.

### 4.   Conversion

In support of their conversion claim, GSS and Sacco assert that GPDI took unlawful possession of GSS's reserve account after terminating the merchant agreement.  GPDI contends that this claim fails because GSS and Sacco voluntarily placed the reserve funds in GPDI's possession, and GPDI used the reserve funds for their intended purpose of providing security for GSS's chargebacks.

Under Georgia law, "[c]onversion consists of an unauthorized assumption and exercise of the right of ownership over personal property belonging to another, in hostility to his rights; an act of dominion over the personal property of another inconsistent with his rights; or an unauthorized appropriation." *Farm Credit of Nw. Fla., ACA v. Easom Peanut Co.*, 312 Ga. App. 374, 381, 718 S.E.2d 590, 600 (2011) (quoting

*Trey Inman & Assocs. v. Bank of Am.*, 306 Ga. App. 451, 457, 702 S.E.2d 711, 716 (2010)).  It is essential for the plaintiff to show "either title or right of possession" to the allegedly converted property.  *Anderson v. Reese*, 85 Ga. App. 437, 440, 69 S.E.2d 656, 658 (1952).

If the defendant came into possession of the property lawfully, the plaintiff must show that the defendant unlawfully refused to return the property after the plaintiff demanded its return.  *Williams v. Nat'l Auto Sales, Inc.*, 287 Ga. App. 283, 285, 651 S.E.2d 194, 196 (2007).  A defendant comes into possession of property lawfully "where he finds it, and retains it for the true owner[,] or where he obtains the possession of the property, by the permission or consent of the plaintiff."  *Id.* (quoting *Lovinger v. Hix Green Buick Co.*, 110 Ga. App. 698, 700-01, 140 S.E.2d 83, 86 (1964)).

GSS and Sacco contend that a demand was not required in this case because "[w]hile physical possession had clearly passed by the creation of the reserve account, beneficial ownership to the funds on reserve remained with [GSS]."  However, for purposes of determining whether a demand was required, ownership is irrelevant.  Instead, a demand is required whenever the defendant's initial *possession* is lawful.  GSS and Sacco admit that GPDI came into possession of the funds with their consent.  Therefore, GPDI's

17

initial possession was lawful, and GSS and Sacco cannot state a claim for conversion without alleging that a demand was made.

GSS and Sacco contend that they satisfied the demand requirement by alleging the following: "GPDI's unauthorized assumption and exercise of ownership over [GSS]'s property, and refusal to return the same, amounts to a conversion . . . ." Arguably, GPDI's refusal implies that some request for the funds was made. However, under Georgia law, the demand must be unequivocal. *Spooner v. Lossiah*, 185 Ga. App. 876, 877, 366 S.E.2d 236, 238 (1988). From these allegations, the Court cannot reasonably infer that an unequivocal demand was made. Therefore, GSS and Sacco have failed to state a claim for conversion.

Moreover, even assuming a demand was made, GSS and Sacco have not plausibly alleged that GPDI's appropriation of the funds was unlawful. Their third-party complaint merely alleges that GPDI took possession of the account after terminating the parties' agreement. They admit that GPDI had the right to assess fees and offset chargebacks using that account and that GSS had a higher than normal rate of chargebacks. However, they fail to allege that GPDI used the reserve account for any improper reason. In fact, in their response to GPDI's motion to dismiss, GSS and Sacco do not

18

address GPDI's claim that it properly used the reserve account to offset chargebacks and expenses.  Such an omission by GSS and Sacco only further supports the Court's conclusion that they have failed to state a claim for conversion.

## III.    Conclusion

Third-Party Defendant Global Payments Direct, Inc.'s motion to dismiss [26] is GRANTED.  All of Third-Party Plaintiffs' claims against Global Payments Direct, Inc. are hereby DISMISSED.

IT IS SO ORDERED this 2nd day of August, 2012.

Timothy C. Batten, Sr.
United States District Judge